**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SERGIO R., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 21-10280 (SDW) <br><br> **OPINION** <br><br> June 30, 2022 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Sergio R.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Scott Tirrell's ("ALJ Tirrell") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Tirrell's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

I.     **PROCEDURAL AND FACTUAL HISTORY**

    A.     **Procedural History**

Plaintiff filed for DIB on November 30, 2017, alleging disability beginning on November 6, 2016, due to a plate in the left wrist, a fractured shoulder, high blood pressure, high cholesterol, a herniated disc in the neck, mental illness, and bipolar disorder. (D.E. 6 (Administrative Record ("R.")) at 267.) The claim was denied initially on February 5, 2018, and upon reconsideration on May 10, 2018. (R. 133–37, 139–41.) ALJ Tirrell held an administrative hearing on November 8, 2019, and issued a written decision on March 30, 2020, finding that Plaintiff was not disabled. (R. 13–26, 33–90.) The Appeals Council denied review on February 22, 2021. (R. 1–4.) Plaintiff then filed the instant appeal in this Court, and the parties completed briefing. (D.E. 1, 13, 16, 17.)

    B.     **Factual History**

Plaintiff alleges that he became disabled at the age of fifty-two. (R. 116, 124.) He has an 11th-grade education and previously worked as a material handler, forklift operator, automobile detailer, and clean-up worker. (R. 25, 268.) Notably, the only question on appeal is whether Plaintiff was disabled for the 55-day period from November 6, 2015 (the "alleged onset date" of disability) through December 31, 2015 (the last date on which Plaintiff was insured for purposes of eligibility for disability insurance benefits). (R. 18.) The following is a summary of the relevant medical evidence in the record.

On November 8, 2012, imaging of Plaintiff's cervical spine showed hypolordosis, foraminal encroachment, and disc wedging, following a motor vehicle accident in 2012. (R. 575.) On September 12, 2013, Plaintiff saw Victoria Miller, Ph.D., for a consultative examination. (R. 650–52.) Plaintiff reported that he experienced several orthopedic injuries following the accident,

including issues in his back, neck, and shoulders. (R. 650.) Plaintiff also reported issues with depression, anxiety, agitation, interpersonal difficulties, irritability, problems with frustration and tolerance, social withdrawal, paranoia, crying spells, poor sleep, and chronic idle thoughts of suicide with no plan or intent to harm himself. (*Id.*) Dr. Miller reported that Plaintiff had a history of major depressive disorder beginning in the 1990s. (*Id.*) Dr. Miller also noted that Plaintiff showed indications of rapid cycling and mania. (*Id.*) His eye contact was poor, his speech was pressured at times, he spoke rapidly, and he typically derailed from the topic. (R. 651.) Dr. Miller also found Plaintiff's mood was dysphoric and at times irritable with an agitated affect. (*Id.*) She diagnosed Plaintiff with bipolar disorder, and determined that Plaintiff's prognosis was "guarded." (R. 652.)

On November 26, 2014, imaging of Plaintiff's right knee showed mild medial and patellofemoral osteoarthritis, and mild fissuring of the articular cartilage at the medical femoral condyle. (R. 661.) In March 2015, eight months before Plaintiff's alleged onset of disability, Mahmoud Aqel, M.D., reported no evidence of any deformity in any extremities, clear lungs and a normal heart despite Plaintiff's obesity, no swelling, and normal ambulation. (R. 718–19.) In August 2015, three months before the relevant period began, Dr. Aqel reported that Plaintiff again exhibited these benign findings, including full range of motion in his neck. (R. 487.) Dr. Aqel also reported that Plaintiff denied memory loss, anxiety disorder, and memory disorder. (*Id.*)

On December 10, 2015, during the relevant period, Plaintiff reported to Harleen Brar, M.D., with complaints of pain in his neck, wrists, and back. (R. 775.) However, upon Dr. Brar's examination, Plaintiff showed no evidence of muscle edema, normal strength in all his extremities, and full range of motion in his back, hands, knees, and shoulders. (R. 775–76.) Dr. Brar also reported that during the relevant period, Plaintiff was fully oriented and exhibited normal cognitive

3

functioning, good insight, and good judgement. (R. 775.) On December 30, 2015, the day before his last day insured, Plaintiff went to the St. Joseph's Regional Medical Center ER complaining of a wrist injury and pain due to a fall. (R. 397.) However, physical examination revealed otherwise normal findings, including no musculoskeletal deficits and intact range of wrist motion, and Plaintiff reported feeling better upon discharge the same day. (R. 398–406.)

Plaintiff's spouse submitted a Third-Party Function Report on December 4, 2017, stating that Plaintiff had difficulty walking due to pain in his right knee, right foot, and Achilles tendon. (R. 303.) She also reported that Plaintiff had pain in his right shoulder, neck, lower back, and spine. (*Id.*)

On January 5, 2018, state agency medical consultant Joseph Sobelman, M.D., reviewed Plaintiff's medical file and found insufficient evidence to conclude that Plaintiff was disabled. (R. 119–20.) State agency medical consultant Mohammad Rizwan, M.D., affirmed this assessment on May 7, 2018. (R. 128.) Separately, on January 9, 2018, state agency psychological consultant Joseph Cools, Ph.D., reviewed Plaintiff's medical file and opined that he had mild impairments in all four areas of mental functioning. (R. 120–21.) State agency psychological consultant Joseph Wieliczko, Psy.D., affirmed these findings on May 9, 2018. (R. 129–30.)

### C. Hearing Testimony

At the administrative hearing on November 8, 2019, Plaintiff appeared with his attorney and testified before ALJ Tirrell. (R. 33–90.) Plaintiff testified that he occasionally hears whispers and sees shadows and dead animals. (R. 58.) Plaintiff became tearful during the hearing as well. (R. 58–59.) Plaintiff claimed he is nervous and has thoughts of hurting others when he is around other people. (R. 59.) Plaintiff estimated he was able to sit for about half an hour at a time, stand for 15 minutes at a time, and walk approximately three blocks before feeling pain. (R. 60–61.)

4

Plaintiff stated that he has difficulty reaching overhead, due to right shoulder pain, and difficulty grabbing objects with his right hand, due to numbness and shakiness. (R. 62–63.) Plaintiff testified that his forearms cramp up when he performs activities that require the use of independent fingers, such as typing. (R. 64.) He stated that he no longer performs household chores such as sweeping or washing dishes due to pain in his lower back. (R. 67.) He also testified that he must rest for three to five minutes after climbing a flight of stairs due to lower back pain. (R. 67–68.) During the hearing, Plaintiff asked the ALJ if he could stand because continuing to sit was causing him pain. (R. 71.)

Michael Smith ("VE Smith"), an impartial vocational expert, also testified at the hearing. (R. 33, 79–90.) VE Smith testified that an individual with Plaintiff's vocational background and RFC, as assessed by ALJ Tirrell, could not perform Plaintiff's previous work, but could perform other jobs that exist in significant numbers in the national economy, including mail clerk, photocopy machine operator, and collator operator. (R. 84.)

## II.   LEGAL STANDARD

### A.   Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere

scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

B.     **The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the

claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the

individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

#### A. The ALJ's Decision

On March 30, 2020, ALJ Tirrell issued a decision concluding that Plaintiff was not disabled for the relevant 55-day period from November 6, 2015, the alleged onset date, through December 31, 2015, the day he was last insured. (R. 18–26.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. (R. 18.) At step two, he

9

found that Plaintiff had the following severe impairments: (1) degenerative disc disease of cervical and lumbar spine, status post-surgery; (2) internal derangement of the right knee; (3) fracture of the left radius, status post-surgery; (4) obesity; (5) right carpal tunnel syndrome; and (6) major depressive disorder. (R. 19.)[2] At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing, including Listing 1.02 (major joint dysfunction), Listing 1.04 (spinal disorders), Listing 12.04 (depressive, bipolar, and related disorders), and Listing 12.06 (anxiety and obsessive-compulsive disorders). (R. 19–21.)

> Assessing Plaintiff's RFC prior to step four, the ALJ found that Plaintiff could:
>
> [P]erform light work . . . except . . . climbing ladders, ropes, or scaffolds, and . . . kneeling or crawling. Further, [he] could never work at unprotected [h]eights or work with machinery involving exposed moving mechanical parts; he could frequently reach in all directions with the dominant upper extremity; and he could frequently perform handling, fingering, and feeling. [He] could understand, remember and carry out simple instructions; could perform simple, routine tasks; could make simple work-related decisions; could adapt to changes in routine work settings; and could have occasional interaction with the public.

(R. 21.) In making this assessment, ALJ Tirrell gave less weight to the opinion of Dr. Miller, and gave more weight to the medical findings, observations, and evaluations of other doctors, including Dr. Aqel, Dr. Brar, and the four state agency evaluators. (*See* R. 22–24.)

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a material handler, forklift operator, automobile detailer, and clean-up worker. (R. 25.) At step five, the ALJ relied on VE Smith's testimony to find that Plaintiff could work as a mail clerk, photocopy machine operator, and collator operator. (R. 26.)

---

[2] ALJ Tirrell did not classify Plaintiff's hypertension, high cholesterol, and obstructive sleep apnea as severe impairments because these conditions were controlled with medication, did not require aggressive treatment or emergency medical care, and did not result in complications. (R. 19.)

**B.     Analysis**

On appeal, Plaintiff asks this Court to vacate and remand the Commissioner's decision. (*See* D.E. 13 at 19.) Plaintiff argues that the ALJ (1) did not give sufficient weight to Plaintiff's subjective complaints, and (2) relied on his own lay opinion to assess Plaintiff's RFC instead of ordering a consultative examination or re-contacting a treating source after finding the only examining medical opinion in the record to be unpersuasive. (*See id.* at 5, 11–19; D.E. 17 at 1–6.) This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff argues that the ALJ failed to properly weigh Plaintiff's subjective allegations, thus rendering his decision unsupported by substantial evidence. (*See* D.E. 13 at 5, 11–13; D.E. 17 at 4–6.) "Allegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citation omitted). An ALJ may discount a claimant's allegations about the intensity, persistence, or limiting effects of his symptoms where the evidence does not fully support those allegations, and "need only include in the RFC those limitations which he finds to be credible." *Salles v. Comm'r of Soc. Sec*, 229 F. App'x 140, 147 (3d Cir. 2007) (citations omitted). "Overturning an ALJ's credibility determination is an extraordinary step, as credibility determinations are entitled to a great deal of deference." *Metz v. Fed. Mine Safety and Health Review Com'n*, 532 F. App'x 309, 312 (3d Cir. 2013) (citation and internal quotation marks omitted). "An ALJ must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Tedesco v. Comm'r Soc. Sec.*, 833 F. App'x 957, 961 (3d Cir. 2020) (citation and internal quotation marks omitted). However, an ALJ is not required to use particular language or adhere to a particular format; rather, the decision need only contain a sufficient "discussion of the evidence" and explanation of the ALJ's reasoning to enable "meaningful judicial review." *Diaz v. Comm'r*

11

*of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citation and internal quotation marks omitted). Finally, an ALJ is not required to find that a plaintiff is symptom-free or experiencing no discomfort to find him not disabled. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986).

Here, the ALJ was free to discount Plaintiff's subjective complaints, which mainly related to how he felt at the hearing four years after the relevant time period. (*See* R. 22.) The ALJ relied on permissible factors and provided sufficient explanation to conclude that there were inconsistencies between Plaintiff's subjective statements and the totality of the medical record. (*Id.*) In evaluating Plaintiff's subjective allegations, ALJ Tirrell considered the medical evidence from the 55-day relevant period, objective evidence beyond the relevant period, and Plaintiff's statements and testimony. (*See* R. 21–24.) Upon consideration of the above evidence, ALJ Tirrell found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 22.) Nonetheless, ALJ Tirrell fully evaluated and accommodated Plaintiff's pain allegations to the extent they were credible, explaining:

> [I]n spite of the claimant's multiple unremarkable physical evaluations, taking into account the combined effect of his physical impairments and considering his subjective allegations along with a history of a shoulder and back pain, as well as knee impairment, I have limited the claimant to performing no more than light exertional work. Due to the claimant's physical pain, [he] could perform all postural maneuvers occasionally, except never climbing ladders, ropes, or scaffolds. The combination of knee and back pain prevent him from never kneeling or crawling and never working at unprotected [h]eights or working with machinery involving exposed moving mechanical parts. Due to the hand pain and normal range of motion, he could frequently reach in all directions with the dominant upper extremity; and frequently reach in all directions with the dominant upper extremity; and frequently handling, fingering, and feeling. Moreover, because of the claimant's depression, he can only understand, remember and carry out simple instructions; perform simple, routine tasks; make simple work-related decisions; adapt to changes in routine work settings; and have occasional interaction with the public.

(R. 24–25.)  The ALJ also considered the Third-Party Function Report statements of Plaintiff's spouse and, after noting that her statements mirrored those of Plaintiff, the ALJ permissibly relied on the medical evidence from the relevant period to explain that these statements were also inconsistent.  (R. 24.)  Significantly, the ALJ fully acknowledged that Plaintiff experienced some limitations due to his conditions, but these did not necessitate a finding that Plaintiff was unable to perform any work during the relevant period.  *See Jones*, 954 F.2d at 129; *Welch*, 808 F. 2d at 270.  Reviewing the ALJ's decision and the medical record as a whole, it is clear that the ALJ sufficiently discussed the evidence and explained his reasoning to enable meaningful judicial review, *see Diaz*, 577 F.3d at 504, and this Court will therefore give his credibility determinations the deference they are due, *see Metz*, 532 F. App'x at 312.

Second, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because he did not adequately develop the record.  (*See* D.E. 13 at 5, 14–19; D.E. 17 at 1–4.)  Specifically, Plaintiff argues that the only examining medical opinion in the record was Dr. Miller's September 2013 opinion and, after finding this opinion to be unpersuasive, the ALJ should have ordered a consultative examination or re-contacted a treating source, instead of relying on his own lay opinion to establish Plaintiff's RFC.  (*See* D.E. 13 at 5, 14–19; D.E. 17 at 1–4.)

The RFC assessment is an administrative finding, not a medical opinion.  *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."); *see also* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c).  Because the ALJ must make the RFC "determination based on the medical evidence, [] he is not required to seek a separate medical opinion," *Mays v. Barnhart*, 78 F. App'x. 808, 813 (3d Cir. 2003), and there is no legal requirement that the particular conclusions that an ALJ adopts in an RFC determination

13

must have also been made by a physician, *see Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). *See also* 20 C.F.R. §§ 404.1527(e), 404.1546(c). For example, in *Chandler*, the Third Circuit reversed a district court's finding that an ALJ conducted improper lay analysis when the ALJ did not rely on a specific medical opinion. *See* 667 F.3d at 362. In doing so, the court noted that an ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Id.*

Similarly, here, ALJ Tirrell made his RFC determination by considering the entire record, and it is of no moment that he did not incorporate the medical opinion of an outside treating physician. His assessment of Plaintiff's RFC was based on the objective medical evidence and it was therefore entirely appropriate. *See id.*

Plaintiff insists that the ALJ should have further developed the record by requesting a consultative examination of Plaintiff's impairments or re-contacting Dr. Aqel for his opinion. (*See* D.E. 13 at 14–19, D.E. 17 at 1–4.) However, the burden of presenting evidence of disability rests with the claimant, not the ALJ. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("[I]n general, you have to prove to us that you are . . . disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)."). "The burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citations omitted). Furthermore, when a claimant is represented by counsel at the administrative level, an ALJ is "entitled to assume that the applicant is making his strongest case for benefits." *Glenn v. Secretary*

14

*of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987). Where the record contains sufficient evidence for the ALJ to reach a conclusion about whether the claimant is disabled, it is up to the ALJ to use his or her discretion to decide whether to further develop the record. An ALJ "may" recontact a medical source or order a consultative examination, but is not required to do so. 20 C.F.R. §§ 404.1519a(a)-(b), 404.1520b(c)(1)-(3); *see also, Bryson v. Comm'r of Soc. Sec.*, 639 F. App'x 784, 787 (3d Cir. 2016) ("[R]econtacting a medical source is now discretionary.").

Here, Plaintiff has been represented by counsel since at least March 2018, just four months after he filed his disability application in November 2017. (R. 185, 227–28.) At the November 8, 2019 administrative hearing, at the request of Plaintiff's attorney, the ALJ indicated that he would leave the record open temporarily for the submission of additional records. (R. 40, 90.) ALJ Tirrell did not issue his decision until March 30, 2020. (R. 26.) Thus, ALJ Tirrell was entitled to assume that Plaintiff had made his strongest case for benefits, as he had two years to secure medical records and additional information through his attorney. *See Glenn*, 814 F.2d at 391. Additionally, the record consists of approximately 1,000 pages and included sufficient evidence for the ALJ to make a disability determination regarding the narrow time period of November 6 through December 31, 2015. (*See* R. 18–25.) There was no need for the ALJ to further develop the record, and the burden to supplement the record ultimately rested with Plaintiff. *See* 42 U.S.C. § 423(d)(5)(A).

Reviewing the ALJ's decision and the medical record as a whole, it is clear that there is substantial evidence—more than a mere scintilla—to support the ALJ's decision that Plaintiff can perform a limited range of light and unskilled work, including the jobs that the VE identified. This Court will therefore affirm.

IV.     **CONCLUSION**

For the foregoing reasons, this Court finds that ALJ Tirrell's factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:     Parties